UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE DUARTE,<br><br>    Plaintiff,<br><br>    v.<br><br>DIMARIO FREELAND, *et al.*,<br><br>    Defendants.<br>_____/ | No. C-05-2780 EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION; AND DENYING MOTION TO RECONSIDER**<br><br>**(Docket No. 65)** |

    Plaintiff Jose Duarte has sued various defendants, including the Oakland Unified School District ("OUSD"), for violations of federal and state law. Mr. Duarte has amended his complaint three times. Each complaint was challenged by a motion to dismiss filed by OUSD, Linda Halpern (the "Principal Defendant"); Randolph Ward (the "Superintendent Defendant"); and David Kakishiba, Gregory Hodge, Gary Yee, Noel Gallo, Alice Spearman, and Kerry Hammill (the "Board Defendants"). Collectively, these defendants shall be referred to as the "School Defendants." Judge Jenkins granted in part and denied in part the motion to dismiss the third amended complaint. *See* Docket No. 62 (order dated September 24, 2007). In the same order, Judge Jenkins noted that he had "previously given Plaintiff leave to amend to attempt to address the deficiencies identified in this Order. Because Plaintiff has not identified any additional facts that he could plead in support of the dismissed claims, and because further leave to amend would be futile, the Court will not grant further leave to amend at this time." *Id.* at 17.

    Subsequently, Mr. Duarte filed the currently pending motion to amend the judgment, relief from judgment, or, in the alternative, for clarification. For the reasons discussed below, the Court construes Mr. Duarte's motion as a motion for leave to file a motion for reconsideration and a

motion to reconsider. Having considered the parties' briefs and accompanying submissions as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part the motion for leave to file a motion for reconsideration and further **DENIES** the motion to reconsider with respect to the breach-of-contract claim.

## I. FACTUAL & PROCEDURAL BACKGROUND

The allegations in the third amended complaint are summarized in Judge Jenkins's order granting in part and denying in part the School Defendants' motion to dismiss:

> On December 4, 2003, Plaintiff was working for the Oakland Unified School District ("OUSD") as a Spanish teacher at the School for Social Justice. (TAC ¶ 37.) On this date, Plaintiff claims that Defendants De Mario Freeland and Vuyo Mbuli, two students at the school, attacked him when he tried to exclude them from his class. (*Id.* ¶¶ 37-38.) Specifically, Plaintiff alleges that they "rammed [him], knocking him backward against the wall causing injury to his left shoulder and arm." (*Id.* ¶ 40.) After Plaintiff finished teaching class that morning, he reported the attack to the school principal, Defendant Linda Halpern, and informed her that he was going to press criminal charges against the students. (*Id.* ¶ 42.) Plaintiff alleges that Principal Halpern responded that she was not going to report the attack to the police. (*Id.* ¶ 42.)
>
> Later that day, Plaintiff went to the school's main office to make a written report of the incident. (*Id.* ¶ 43.) At this time, Plaintiff saw another teacher, who Plaintiff identifies as "George," talking to Defendant Mbuli. (*Id.*) Plaintiff alleges that Defendant Mbuli saw Plaintiff, became angry, and "taunted [Plaintiff] to a fight so [Plaintiff] started to leave." (*Id.*) However, before Plaintiff was able to leave the office, Defendant Mbuli charged at him, grabbed Plaintiff by the shoulder, and yelled, "Spanish bitch . . . I'm gonna get you . . . you better watch your back!" (*Id.*)
>
> Plaintiff alleges that, at the time of the attack, the school did not have any security guards on campus, and its classrooms did not have any peepholes in the doors, telephones, or any other communication devices in the classrooms. (*Id.* ¶ 44.) Additionally, Plaintiff alleges that the various Defendants failed to warn him about the Student Defendants' behavioral disorders, failed to provide certain security measures to prevent dangerous conditions on the school campus, and failed to remove the Student Defendants from campus after the attack. (*Id.* ¶ 55.) Plaintiff further alleges that, on the morning of the attack, Defendants were aware that Defendant Mbuli was intoxicated before he went to Plaintiff's class, but failed to warn Plaintiff about Defendant Mbuli's condition and failed to remove him from campus. (*Id.* ¶ 48.)
>
> Plaintiff alleges that on December 5, 2003, his psychologist, Dr. Suzanne Sloman, informed OUSD that Plaintiff was temporarily disabled and could not teach. (*Id.* ¶ 58.) At that time, Plaintiff

requested leave based on his disability. (*Id.* ¶ 59.) Also in December 2003, Plaintiff alleges that he wrote to Defendant Halpern about his injuries. (*Id.* ¶ 64.) However, he claims that OUSD did not contact him to propose an accommodation for his disability. (*Id.* ¶ 65.)

At about the same time, Plaintiff alleges that the Oakland Educators Association advised him to seek restraining orders against the Student Defendants. (*Id.* ¶ 67.) Soon thereafter, Plaintiff sought a restraining order in Alameda Superior Court. (*Id.* ¶ 68.) Plaintiff alleges that at the January 9, 2004 order to show cause hearing, OUSD administrators "represented, supported, and ratified the Student Defendants' conduct at the hearing." (*Id.* ¶ 69.) Plaintiff also alleges that Defendants Halpern and Akuno Williams, a school administrator, argued against issuance of the restraining order and "spoke in favor of the attackers during work hours." (*Id.* ¶¶ 70-71.) Plaintiff claims that Defendants advocated on behalf of the student Defendants with the consent of Defendants' supervisors, Defendant Randolph Ward and the School Board, and did not face any disciplinary action for their statements. (*Id.* ¶ 71.) The court issued the restraining order against both Student Defendants. (*Id.* ¶ 70.) Subsequently, Plaintiff alleges that Akuno Williams, an administrator at the School for Social Justice, made defamatory remarks about him in the East Bay Express Newspaper in retaliation for Plaintiff's protected activity. (*Id.* ¶ 74.) Plaintiff claims that in January 2004, Dr. Sloman informed OUSD that he was permanently disabled from teaching. (*Id.* ¶ 75.) Thereafter, Plaintiff filed a complaint with OUSD regarding the attack and his resulting injuries. (*Id.* ¶ 81.) He also filed a complaint with his labor union, the OEA, for disability discrimination and retaliation, so that OEA would forward it to OUSD. (*Id.* ¶ 82.) According to Plaintiff, the following month, February 2004, "the Board and Randolph Ward met, voted to, and did in fact terminate Plaintiff as a result of his injury claims, disability claims, complaints of workplace safety, testifying in court to secure protection against crime, exposing the workplace dangers in OUSD in open court, and complaining of disability discrimination." (*Id.* ¶ 104.)

On April 1 and 8, 2004, Plaintiff filed a complaint with OUSD regarding the dangerous working conditions and his disabling injuries. (*Id.* ¶¶ 83-84.) In June 2004, Plaintiff filed a complaint pursuant to California Government Code § 910 for discrimination and retaliation based on disability. (*Id.* ¶ 85.) Plaintiff claims that in July 2004, OUSD wrongfully denied him dental benefits in retaliation for his disability claims and complaints of discrimination. (*Id.* ¶ 86.) On July 15, 2004, Plaintiff received a continuing benefits/COBRA letter from OUSD, which Plaintiff claims is the only notice he received indicating that his employment had been terminated on June 30, 2004. (*Id.* ¶ 87.) Plaintiff alleges that he was terminated in retaliation for exercising his right to seek redress from the government, right to speak out about government injustice, filing claims for his injuries, speaking out about his unsafe classroom, and protecting his students from the Student Defendants. (*Id.* at ¶ 89.)

Plaintiff alleges that as a result of the attack, he suffered severe emotional distress, permanent injury to his left shoulder, and is now permanently disabled because of the trauma.

United States District Court
For the Northern District of California

*Duarte v. Freeland*, No. C05-02780 MJJ, 2007 U.S. Dist. LEXIS 73750, at *3-8 (N.D. Cal. Sept. 24, 2007).

As noted above, Judge Jenkins granted in part and denied in part the School Defendants' motion to dismiss the third amended complaint. Among the claims that were dismissed were: (1) various tort claims (*e.g.*, assault and battery, intentional and negligent infliction of emotional distress, negligence); (2) failure to discharge a mandatory duty; (3) various violations of the California Labor Code, but only with respect to the Board, Superintendent, and Principal Defendants (*i.e.*, as individuals); and (4) various breach-of-contract claims (*e.g.*, breach of contract, breach of implied-in-fact contract, breach of the implied covenant of good faith and fair dealing, intentional interference with contractual relations, inducing breach of contract). Mr. Duarte has now filed a motion in which he seeks, in effect, reconsideration of Judge Jenkins's rulings with respect to these claims.

## II.  DISCUSSION

A.  <u>Request to Amend Complaint and Request for Clarification</u>

As a preliminary matter, the Court addresses Mr. Duarte's requests in his motion that (1) the Court provide clarification as to why his claims for violations of 42 U.S.C. §§ 1985 and 1986 were deficient and (2) he be permitted to amend his complaint "to correct the mistaken omission of defendant principal Halpern from Count VI Wrongful Termination."

The Court denies the first request. Judge Jenkins already provided in his order the reason why the §§ 1985 and 1986 claims were being dismissed. *See id.* at 6 (noting that "Plaintiff's mere allegations of conspiracy without factual specificity are insufficient").

The Court further denies the second request. Mr. Duarte did, in his third amended complaint, assert a claim for wrongful termination against Ms. Halpern, *see* Compl. at 34 (stating that the claim for wrongful discharge in violation of public policy was asserted "against School District, School Board, Superintendent, and Principal defendants only"), but failed to include any allegations supporting the claim that she was a part of the alleged termination. That was the basis of Judge Jenkins's ruling. *See* Docket No. 62, at 13 (order, dated September 24, 2007) (explaining that Mr. Duarte had failed to state a claim for wrongful termination against Ms. Halpern because "there are

no allegations in the claim that [she] was a part of the alleged termination"). Mr. Duarte claims that his failure to include specific allegations about Ms. Halpern was a mere "error in drafting," Pl.'s Supp. Br. at 5, but Mr. Duarte was given multiple opportunities to amend by Judge Jenkins and failed to correct this deficiency. To the extent Mr. Duarte now wants to add allegations that Ms. Halpern was a part of the alleged termination, Judge Jenkins has already held that no further amendments are permitted because Mr. Duarte was given multiple opportunities to amend. *See id.* at as 17 ("Because Plaintiff has not identified any additional facts that he could plead in support of the dismissed claims, and because further leave to amend would be futile, the Court will not grant further leave to amend at this time."). The Court sees no reason to depart from Judge Jenkins's ruling.[1]

B. <u>Legal Standard</u>

The main relief sought by Mr. Duarte with the currently pending motion is an amendment of and relief from the judgment. Although Mr. Duarte styles his motion as one pursuant to Federal Rules of Civil Procedure 59(e), there has been, as the School Defendants point out, no final judgment in the instant case and what Mr. Duarte is really seeking is reconsideration of Judge Jenkins's interlocutory order.

Under Civil Local Rule 7-9, "[n]o party may notice a motion for reconsideration without first obtaining leave of Court to file the motion." Civ. L.R. 7-9(a). Moreover,

[t]he moving party must specifically show:

(1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or

---

[1] That "an individual-supervisor may be held personally liable for retaliation under the FEHA," *Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1288 (9th Cir. 2001), is of no consequence because the dismissal was based on the insufficiency of the factual allegations. Mr. Duarte also claims that an individual supervisor can be held liable for wrongful termination in violation of public policy based on certain provisions of the California Labor Code. However, Judge Jenkins dismissed the direct claims for violations of Labor Code §§ 98.6 and 6399.7 against all of the individual defendants. *See* Part II.E, *infra*.

|   |   |
|---|---|
| (2) | The emergence of new material facts or a change of law occurring after the time of such order; or |
| (3) | A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order. |

Civ. L.R. 7-9(b). Finally, Civil Local Rule 7-9 instructs that "[n]o motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered. Any party who violates this restriction shall be subject to appropriate sanctions." Civ. L.R. 7-9(c).

In the instant case, Mr. Duarte did not ask leave of the Court to file a motion for reconsideration, and therefore the Court could reject his motion outright. However, in the interest of justice, the Court shall not hold Mr. Duarte to this procedural requirement. That being said, the substantive standards laid out in Civil Local Rule 7-9(b) and (c) still apply.

C. <u>Workers' Compensation Exclusivity</u>

In his order, Judge Jenkins dismissed multiple tort claims asserted by Mr. Duarte on the basis that they were barred by the exclusive remedy provided for by the workers' compensation laws. *See* Docket No. 62, at 10-12; Cal. Lab. Code § 3601(a) ("Where the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation, pursuant to the provisions of this division is, except as specifically provided in this section, the exclusive remedy for injury or death of an employee against any other employee of the employer acting within the scope of his or her employment . . . .").

In his motion, Mr. Duarte argues that workers' compensation exclusivity should not have been applied because exclusivity may only be applied where, *inter alia*, there is an employment contract between the employee and employer, and Judge Jenkins concluded in his order (when discussing the breach of contract and related claims) that Mr. Duarte had failed to allege that a contract existed between him and the School Defendants. Mr. Duarte further argues that exclusivity only applies where there is a causal connection between the injury suffered and the employment (*i.e.*, the injury must arise out of the employment) and Judge Jenkins "did not address how a violent crime against a teacher arises out of the employment bargain." Mot. at 4-5. Finally, Mr. Duarte

argues that Judge Jenkins failed to explain why the School Defendants should not be held liable under the in loco parentis doctrine.

All of the arguments that Mr. Duarte makes in his motion were made in his opposition to the School Defendants' motion to dismiss the second amended complaint. *See* Docket No. 36, at 5-9 (opposition, dated June 6, 2006) (arguing, *inter alia*, that the School Defendants have "not proven that Plaintiff was their employee," that there was a "causal connection between [the] violence and the workplace," and that there is liability based on the in loco parentis doctrine). Thus, Mr. Duarte has failed to satisfy either Civil Local Rule 7-9(b)(1) or (2) and, further, has violated Civil Local Rule 7-9(c), which specifically provides that "[n]o motion for leave to file a motion for reconsideration may repeat any oral or written argument made by the applying party in support of or in opposition to the interlocutory order which the party now seeks to have reconsidered." Civ. L.R. 7-(c).

Moreover, Mr. Duarte has failed to show that there was a manifest failure by Judge Jenkins to consider material facts or dispositive legal arguments which were presented to him before issuance of his order. Civil Local Rule 7-9(b)(3). Regarding material facts, contrary to what Mr. Duarte claims, he did allege in his third amended complaint that there was an employment relationship between himself and the OUSD. *See* TAC ¶ 14 ("At the time of the incident, Mr. Duarte was an employee of OUSD under a contract whereby Mr. Duarte was a probationary, credentialed Spanish teacher, hired to teach high school Spanish at the School for Social Justice."); TAC ¶ 117 ("About November 2003, Mr. Duarte signed contract documents at OUSD. Those contract documents provided for an annual salary of $46,000 per year, step increases, health benefits, dental benefits, retirements, and disability benefits. Also, employment with OUSD entitled Mr. Duarte to cancellation of his student loans over time for teaching in a shortage area.").

More fundamentally, contrary to what Mr. Duarte argues, the existence of a contractual relationship is not necessary to exclusivity of workers' compensation. What is required under California Labor Code § 3600 is that at the time of the injury "the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment." Cal. Labor Code § 3600(a)(2). As *Halliman v. Los Angeles Unified School District*,

163 Cal. App. 3d 46 (1984) demonstrates, workers' compensation exclusivity applies to public school teacher even though public employment in California is held by statute and not by contract. *See Shoemaker v. Myers*, 52 Cal. 3d 1, 23-24 (1990) ("[I]t is well settled in California that public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law.") (internal quotation marks omitted); *Summers v. City of Cathedral City*, 225 Cal. App. 3d 1047, 1065 (1990) (same); *see also Portman v. County of Santa Clara*, 995 F.2d 898, 905 (9th Cir. 1993) ("Under California law, the terms of *public* employment are governed entirely by statute, not by contract, and hence as a matter of law, there can be no express or implied-in-fact contract between plaintiff and [the County] which restricts the manner or reasons for termination of his employment.") (emphasis in original; internal quotation marks omitted)

*State Compensation Insurance Fund v. Workers' Compensation Appeals Board*, 59 Cal. App. 3d 647 (1976), which suggests that employment for exclusivity purposes depends on an underlying agreement between the parties is not dispositive. *See id.* at 652. There, the court relied on California Labor Code § 3351 which defines "employee" as one "under any appointment *or* contract of hire." Cal. Lab. Code § 3351 (emphasis added). As the California Supreme Court held in *Arriaga v. County of Alameda*, 9 Cal. 4th 1055 (1995), given § 3351's explicit use of the disjunctive, "a contract for hire is *not* 'a prerequisite' to the existence of an employment relationship." *Id.* at 1061 (emphasis in original). The Court also pointed out that, under § 3357, "'[a]ny person rendering service for another, other than as an independent contractor, or unless expressly excluded . . . , is presumed to be an employee.'" *Id.* (quoting California Labor Code § 3357).

Thus, contrary to what Mr. Duarte asserts, it was not inherently inconsistent for Judge Jenkins to find both workers' compensation exclusivity and a lack of basis for Mr. Duarte's contract claims. Exclusivity applies whether or not there is an employment contract where the employee is a public employee. To the extent Judge Jenkins's reasoning was implicitly based on the existence of a contract, reconsideration is denied because that assumption whether right or wrong is immaterial to the applicability of workers' compensation exclusivity.

As for dispositive legal arguments, as Judge Jenkins properly concluded, this case is analogous to *Halliman v. Los Angeles Unified School District*, 163 Cal. App. 3d 46 (1984). Mr. Duarte contends that *Halliman* is distinguishable because, in that case, there were no reports of prior assaults on the plaintiff-teacher by the same student, *see id.* at 50, whereas, in his case, there were prior incidents involving him and each student. There are two problems with this argument.

First, Mr. Duarte never presented this argument to Judge Jenkins as part of his opposition to the motion to dismiss the second amended complaint. Mr. Duarte simply argued that "*Halliman* and defendants' opaque conception of human rights [is] offensive." Docket No. 36, at 7 (opposition, filed on June 6, 2006). Therefore, he has failed to meet the standard laid out by Civil Local Rule 7-9(b)(3).

Second, even if the Court were to consider the merits of the argument, it has weaknesses. For example, while there were prior incidents involving Mr. Duarte and Mr. Freeland (at least, as alleged in the third amended complaint), neither of the prior incidents involved an assault or even an act of aggression by Mr. Freeland. Rather, the third amended complaint simply reflects that Mr. Freeland acted disruptively. *See* TAC ¶ 37 (alleging that, the day before the incident at issue, Mr. Freeland had been disruptive "with loud outbursts such as 'puta' . . . throughout the one-hour class period"); TAC ¶ 38 (alleging that, the day of the incident at issue, Mr. Freeland "burst into [the] classroom through a door from an adjacent classroom that had been blocked by heavy desks to prevent intrusion" and that, after Mr. Duarte asked him to leave, he "refused and continued to disrupt the class with loud outbursts"). Furthermore, there is no allegation that Mr. Duarte *reported* either of these incidents involving Mr. Freeland prior to the day of the assault at issue.

With respect to Mr. Mbuli, the third amended complaint does contain allegations that he assaulted Mr. Duarte twice, with the second attack occurring after Mr. Duarte informed Ms. Halpern of the first attack. *See* TAC ¶¶ 40-44. However, there is no allegation in the third amended complaint that Ms. Halpern's failure immediately to summon law enforcement and/or suspend Mr. Mbuli after being told about the incident constituted purposeful ratification of the first attack. Indeed, in his motion, Mr. Duarte characterizes Ms. Halpern's failure to act as indifference. *See* Mot. at 8. *See also Iverson v. Atlas Pacific Eng'g*, 143 Cal. App. 3d 219, 228 n.7 (1983)

9

("'precluding actions at law for those intentional torts committed without a specific intent to injure would be consistent with the traditional policy of relying on workers' compensation to cover "accidents" on the job'"). Furthermore, even if Ms. Halpern's failure to act could be considered ratification, several courts have held that the ratification must be done with the intent to injure. Here, there is no allegation that Ms. Halpern's failure to act was done for the purpose of injuring Mr. Duarte. *See Hart v. National Mortgage & Land Co.*, 189 Cal. App. 3d 1420, 1430 (1987) (stating that employer could be said to have ratified co-employee's tortious conduct by having notice of the conduct and failing to take action but adding that "it must be shown [that the employer] did this for the purpose of causing [the plaintiff] emotional distress"; adding that, if the plaintiff "is able to allege [the employer] acted with the intent to injure, he should be permitted to do so"); *see also Roberts v. Pup 'N' Taco Driveup*, 160 Cal. App. 3d 278, 283 (1984) (noting that "[t]he modern view respecting actionable intentional misconduct by the employer is that it must be alleged and proved that the employer 'acted deliberately with the specific intent to injure' the employee").

The Court therefore denies Mr. Duarte's motion to reconsider Judge Jenkins's ruling on workers' compensation exclusivity.

D. <u>Failure to Discharge Mandatory Duty</u>

Mr. Duarte also moves the Court to "reinstate" his claim for failure to discharge a mandatory duty, which Judge Jenkins dismissed on the basis of workers' compensation exclusivity. In his motion, Mr. Duarte argues that the claim should be resuscitated because "[i]t is well established that causes of action arising under statute, particularly those enunciating a public policy are not subject to workers' compensation exclusivity. The California Supreme Court has stated explicitly, '[W]e have refused to bar both statutory and tort claims where their motive element violates such a policy.'" Mot. at 9 (quoting *Vacanti v. State Compensation Ins. Fund*, 24 Cal. 4th 800, 823 (2001).

Similar to above, this same exact argument was presented to Judge Jenkins in opposition to the School Defendants' motion to dismiss the second amended complaint, and therefore Mr. Duarte has failed to satisfy either Civil Local Rule 7-9(b)(1) or (2). *See* Docket No. 36, at 7-8 (opposition, dated June 6, 2006) (asserting that "[t]he exclusive remedy doctrine does not apply to causes of

action created by statute" or where the motive behind the acts at issue violates a fundamental policy of the state).

Likewise, Mr. Duarte has failed to meet the standard of Civil Local Rule 7-9(b)(3). The legal argument presented by Mr. Duarte in his earlier opposition and restated in the pending motion is not dispositive. First, many of the statutes cited by Mr. Duarte do not seem to impose any mandatory duty on the School Defendants. *See Haggis v. City of Los Angeles*, 22 Cal. 4th 490, 501 (2000) (indicating that whether a statute contains a mandatory duty depends on whether the statute contemplates a discretionary decision). They do not require the School Defendants to do anything at all (*e.g.*, Article I, § 1 of the California Constitution and California Education Code §§ 44808, 44030, 48910(a) and (b)).

Second, with respect to the remaining statutes identified by Mr. Duarte in his motion (*e.g.*, California Education Code §§ 32225, 48915, 49079(a)), Mr. Duarte has failed to show why workers' compensation exclusivity should not apply. In *Vacanti*, the case which Mr. Duarte cites in support, the California Supreme Court simply stated as follows:

> In addition to the acts themselves, the motive element of a cause of action may insulate that cause of action from the purview of the exclusive remedy provisions. This exception to exclusivity, however, is quite limited. "[A]ny inquiry into an employer's motivation is undertaken not to determine whether the employer intentionally or knowingly injured the employee, but rather to ascertain whether the employer's conduct violated public policy and therefore fell outside the compensation bargain." In other words, the motive element of a cause of action excepts that cause of action from exclusivity *only if* it violates a fundamental public policy of this state.

*Vacanti*, 24 Cal. 4th at 823. In the instant case, Mr. Duarte has failed to articulate how any motive element in his cause of action for failure to discharge a mandatory duty violates a fundamental public policy. *See, e.g.*, *id.* at 824-25 (concluding that "neither abuse of process nor fraud contains a motive element that violates a fundamental public policy" because "[a]buse of process claims merely require malice, which 'may be inferred from the wilful abuse of the process'" and "fraud requires only an 'intent to induce' another 'to alter his position to his injury or risk' and not an intent that violates a public policy rooted in a constitutional, statutory, or regulatory provision"; but concluding that a Cartwright Act claim does require a motive that violates a fundamental public

policy rooted in a statutory provision based on a case which stated that the Act "'articulates in greater detail a public policy against restraint of trade that has long been recognized by common law'").

E.  California Unfair Labor Practices

In his order, Judge Jenkins dismissed Mr. Duarte's claims for violations of the California Labor Code, but only with respect to the claims asserted against the individual defendants, *i.e.*, the Board, Superintendent, and Principal Defendants. Judge Jenkins explained that "none of the Labor Code provisions cited by [Mr. Duarte] create a private cause of action against the individual defendants." Docket No. 62, at 13 (order, dated September 24, 2007).

In his motion, Mr. Duarte contends that California Labor Code §§ 98.6, 230(b), and 6399.7 do provide for private causes of action against individuals -- noting, for example, that §§ 98.6 and 6399.7 provide that "'[n]o *person* shall discharge . . . '" and that § 230(b) provides that "'[a]n *employer* may not discharge . . . .'" Mot. at 11 (emphasis added). But this same argument was presented to Judge Jenkins in Mr. Duarte's opposition to the motion to dismiss the second amended complaint; consequently, Mr. Duarte has failed to meet the standards laid out in Civil Local Rule 7-9(b)(1) and (2).

Furthermore, Mr. Duarte has failed to meet the standard laid out in Civil Local Rule 7-9(b)(3). Mr. Duarte has not set forth any dispositive legal argument that was presented to Judge Jenkins that he failed to consider. While California Labor Code § 2699 *et seq.* provides that an aggrieved employee may file a civil action for violations of §§ 98.6, 230(b), and 6399.7, Mr. Duarte has not cited to any case law or other clear authority establishing that there is a private right of action against *individuals* (as opposed to employers which could include persons) under the relevant California Labor Code provisions.

F.  Breach of Contract

Finally, in his order, Judge Jenkins dismissed Mr. Duarte's claim for breach of contract, stating that Mr. Duarte had failed to adequately plead "facts that establish that a contract existed between the parties, [or] what conduct constituted the breach." Docket No. 62, at 15 (order, dated September 24, 1997). Judge Jenkins also dismissed related claims, *i.e.*, claims for breach of

implied-in-fact contract, breach of implied covenant of good faith and fair dealing, intentional interference with contractual relations, and inducement of breach of contract. In his motion, Mr. Duarte appears to seek reconsideration of only the claim for breach of contract and not any of the related claims.[2] Furthermore, he appears to seek reconsideration of the breach-of-contract claim with respect to the School District only.[3] Mr. Duarte contends that Judge Jenkins erred in dismissing the breach-of-contract claim because such a ruling was inconsistent was his conclusion that workers' compensation exclusivity applied.

In contrast to the above, here, the Court finds that Mr. Duarte has satisfied the standard laid out in Civil Local Rule 7-9(b)(3) -- *i.e.*, that there was a manifest failure by Judge Jenkins to consider material facts related to the breach-of-contract claim. As noted above, in his third amended complaint, Mr. Duarte made the following allegations:

(1) "At the time of the incident, Mr. Duarte was an employee of OUSD under a contract whereby Mr. Duarte was a probationary, credentialed Spanish teacher, hired to teach high school Spanish at the School for Social Justice." TAC ¶ 14.

(2) "About November 2003, Mr. Duarte signed contract documents at OUSD. Those contract documents provided for an annual salary of $46,000 per year, step increases, health benefits, dental benefits, retirements, and disability benefits. Also, employment with OUSD entitled

---

[2] To the extent Mr. Duarte seeks to resuscitate the related claims, there appears to be problems with at least some of them. For example, it is not clear how the individual defendants could have interfered with the contract between Mr. Duarte and OUSD when the individual defendants were likely agents of OUSD, *see* TAC ¶¶ 16-24 (alleging affiliation with OUSD), and a party cannot interfere with its own contract. *See Applied Equip. Corp. v. Litton Saudi Arabia*, 7 Cal. 4th 503, 513 (1994) ("California recognizes a cause of action against *noncontracting parties* who interfere with the performance of a contract.") (emphasis in original). Similarly, it is not clear how the individual defendants could have induced OUSD to breach the contract between Mr. Duarte and OUSD if they were agents of OUSD. *See Shoemaker v. Myers*, 52 Cal. 3d 1, 24 (1990) ("It is axiomatic . . . that there can be no action for inducement of breach of contract against the other party to the contract. It is also well established that corporate agents and employees acting for and on behalf of a corporation cannot be held liable for inducing a breach of the corporation's contract.").

[3] In the third amended complaint, the breach-of-contract claim is asserted against not only the School District but also the Board and Superintendent Defendants. Although, in the complaint, Mr. Duarte alleges that he had a contract with the Board and Superintendent Defendants as well as the School District, *see* TAC ¶ 259, the contract to which Mr. Duarte refers in the third amended complaint is the collective bargaining agreement between the School District and the Oakland Education Association. *See* TAC, Ex. 10.

13

Mr. Duarte to cancellation of his student loans over time for teaching in a shortage area."
TAC ¶ 117.

In addition, Mr. Duarte alleged: "About December 2003, Mr. Duarte and OUSD entered into an agreement. The consideration was reasonable. Mr. Duarte performed all covenants required of him by the contract." TAC ¶ 247. Through the above allegations, Mr. Duarte did sufficiently allege that there was a contract between him and OUSD.

Furthermore, in the third amended complaint, Mr. Duarte did specify what conduct constituted the breach: "The contract terms provided that Mr. Duarte could not be discharged without good cause under the express terms of the collective bargaining agreement . . . . The contract terms provided that the board would refrain from discriminating on the basis of handicap (Exh. 10 [collective bargaining agreement]). Moreover, the contract terms provide[d] for protection from violent students and for safety devices (Exh. 10)." TAC ¶ 264.

Thus, based on the above allegations, the Court concludes that Mr. Duarte's motion for leave to file a motion for reconsideration should be granted and turns to the merits of the motion to reconsider.

The Court, upon reconsideration, affirms Judge Jenkins's dismissal. Public employment is governed not by contract, but by statute . *See Shoemaker*, 52 Cal. 3d at 23-24 (concluding that plaintiff had failed to state a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing because he was a civil service employee; noting that "[i]t is well settled in California that public employment is not held by contract but by statute and that, insofar as the duration of such employment is concerned, no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law") (internal quotation marks omitted); *accord Portman*, 995 F.2d at 905; *see also Summers v*, 225 Cal. App. 3d at 1065(stating that "[t]his rule applies at all levels of government"). Under *Shoemaker*, *Portman*, and *Summers*, public employees such as teachers have no private claims for breach of contract or other derivative state claims based on contract.

14

The Court therefore grants Mr. Duarte's motion to reconsider with respect to the breach-of-contract claim, but affirms Judge Jenkins's dismissal.[4]

### III. CONCLUSION

For the foregoing reasons, Mr. Duarte's motion for leave to file a motion for reconsideration is granted in part and denied in part. To the extent reconsideration is permitted, it is denied on the merits.

This order disposes of Docket No. 65.

IT IS SO ORDERED.

Dated: February 21, 2008

_____
EDWARD M. CHEN
United States Magistrate Judge

---

[4] Even if Mr. Duarte could state a claim for breach of contract, such a claim would be problematic for additional reasons. *See, e.g.*, *Pichon v. Pacific Gas & Elec. Co.*, 212 Cal. App. 3d 488, 500 (1989) ("[W]here an employee sues for breach of contract, and the same conduct also caused a compensable injury, that employee should simply be precluded from recovering any damages caused by the compensable injury in a suit against his former employer."); *see also Mayer v. Multistate Legal Studies*, 52 Cal. App. 4th 1428, 1434 (1997) ("*Pichon* forecloses double recovery of economic damages that were compensated by workers' compensation benefits.").

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOSE DUARTE,

        Plaintiff,

        v.

DIMARIO FREELAND, *et al.*,

        Defendants.
_____/

No. C-05-2780 EMC

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the U.S. District Court, Northern District of California. On the below date, I served a true and correct copy of the attached, by placing said copy/copies in a postage-paid envelope addressed to the person(s) listed below, by depositing said envelope in the U.S. Mail; or by placing said copy/copies into an inter-office delivery receptacle located in the Office of the Clerk.

Jose Duarte
5319 Broadway Terrace #103
Oakland, CA 94618

*ALL OTHER COUNSEL SERVED VIA ELECTRONIC FILING ("E-FILING")*

Dated: February 21, 2008        RICHARD W. WIEKING, CLERK

By:     /s/
       Leni Doyle
       Deputy Clerk